UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON BRADLEY, SR.,

        Plaintiff,

v.                                                               Case No. 20-C-81

KYLE TRITT, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Brandon Bradley, Sr., who is serving a state prison sentence at Columbia Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Bradley is proceeding on the following claims: an excessive force claim against Robert Bikowski, Nicholas Wodack, and Jesse Jones; a failure to intervene claim against Kyle Tritt, Tanner Leopold, and Joseph Beahm; and a deliberate indifference claim against Brian Taplin. This matter comes before the Court on Defendants' motion for summary judgment on exhaustion grounds and on the merits as well as Bradley's motion for summary judgment and motions for sanctions. Defendants' motion will be granted and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the substance of the parties' arguments, the Court will address Bradley's two motions for sanctions and his motion for summary judgment. Bradley seeks default judgment as a sanction, asserting that Defendants failed to timely respond to his complaint. Defendants filed their answer on May 29, 2020, which was within the sixty-day deadline set by the Court. Because

their answer was timely filed, sanctions are not warranted. Bradley also seeks sanctions due to Defendants' "blatant disregard for due process with their obvious perjury, frivolous documents, interrogatories, affidavits and declarations." Dkt. No. 72. Bradley's assertions are conclusory and unsupported. Sanctions are not warranted on this basis either. Both motions for sanctions will be denied.

As to Bradley's motion for summary judgment, The Court will deny the motion because Bradley failed to comply with the Court's local rules regarding summary judgment procedures. *See* Civil L.R. 56(b). Bradley's motion is not accompanied by a memorandum of law, and his statement of proposed material facts fails to cite to the affidavits, declarations, and other supporting materials Bradley relies on to support each fact. While Bradley attaches documents in support of his motion that he captions as declarations and official transcripts, these documents are largely inadmissible. Bradley explains that the documents are handwritten copies of original documents, but they are not authenticated or signed by the alleged declarant. And, with regard to Bradley's own declaration, he fails to cite to evidence supporting those assertions for which he lacks personal knowledge. In light of these deficiencies, the Court will deny Bradley's motion. To the extent portions of his submissions are admissible, the Court will consider them in response to Defendants' motion for summary judgment.

## BACKGROUND

On March 16, 2018, Bradley was incarcerated at Waupun Correctional Institution and was confined in the restrictive housing unit. Dkt. No. 77 at ¶1. Bradley was to be placed on control status because he had used a milk carton to throw liquid (Defendants believe it was urine; Bradley says it was water) on Leopold's shoes. *Id.* at ¶5. Tritt, Wodack, Bikowski, and Jones went to Bradley's cell to move him. *Id.* at ¶¶2-3. Bradley initially complied with Defendants' commands.

2

He was placed in hand and leg restraints and a spit mask was placed on him pursuant to a spit mask restriction. *Id.* at ¶¶7-8. Defendants then escorted Bradley to a strip cell because all inmates who change security status undergo a strip search. *Id.* at ¶10.

An inmate is given the chance to conduct the strip search himself, during which staff do not touch him, but if an inmate refuses to cooperate, staff may conduct a staff-assisted strip search. Dkt. No. 77 at ¶10. During a staff-assisted strip search, staff cut the inmate's clothes off his body and physically touch the inmate using well-defined techniques. *Id.* Tritt asked Bradley if he would comply with a strip search. *Id.* at ¶11. Bradley responded, "No, cut off my clothes and I haven't showered for a week ha ha." *Id.*

An officer who is not a defendant documented the search by video. *Id.* at ¶13. Wodack narrated his actions throughout the staff-assisted strip search, beginning with cutting Bradley's clothes with the dura-shears. *Id.* at ¶14. Several times Bradley yelled, "I'm gonna kill one of you all." *Id.* at ¶15. As Wodack began to remove Bradley's pants using the dura-shears, Bradley stated, "Make sure you get all up in my ass," and he pushed his buttocks back toward Wodack. *Id.* at ¶18. Bikowski then told Bradley to stop resisting as he and Jones stabilized Bradley against the strip cell door by using a compliance hold. *Id.* at ¶19. A compliance hold is a two-handed hold, where staff secure the inmate's elbow with one hand and blanket the top of the inmate's hand with the palm of the other hand. *Id.* at ¶35. It can also include applying pressure to the wrist by folding the wrist toward the forearm. *Id.* The pressure is released once compliance is gained. *Id.*

Wodack resumed removing Bradley's pants, at which time Bradley stated, "I'm gonna kill one of you all. As long as I stay at the institution it's going to be a threat. Staff are going to get hurt or I'm going to get hurt I swear to god." *Id.* at ¶21. Wodack then removed Bradley's socks and informed Bradley he would begin searching for contraband. *Id.* at ¶22. Wodack verbalized

3

each step and checked Bradley's feet, toes, hand, fingers, and ears. *Id.* at ¶23. He used the back of his bladed hands to separate Bradley's buttocks and to lift his scrotum and penis. *Id.* A privacy wrap was then placed around his waist. *Id.* at ¶25. While it was being placed, Bradley said, "This is going to continue till I leave this institution. One way or another, I'm leaving, even if one of you gotta die, I swear to god." *Id.*

Defendants assert that Bradley said his spit mask was working its way up close to his lips, so Wodack informed him that he would replace the spit mask with a spit hood. Dkt. No. 77 at ¶26. Wodack also asked Bradley if he had any injuries and if needed to be seen by health services. *Id.* at ¶27. Bradley wanted to be seen for injuries to his wrist, arm, and a past gunshot wound in his leg. *Id.* Nurse Taplin was contacted, and Tritt told Bradley that he would be examined. *Id.* at ¶¶28, 31. Taplin did not observe any deformities or cuts on Bradley's wrists, so he medically cleared him to go to his cell. *Id.* at ¶32. Taplin says he observed Bradley being very disruptive, so he decided to stay in the area until Bradley was placed in his cell in case Bradley claimed further injuries. *Id.* at ¶33.

Jones and Bikowski began to escort Bradley to the control status cell. *Id.* at ¶38. More than once, Tritt instructed Bradley to remain facing forward. *Id.* At one point, Bradley turned to his left and yelled at Taplin, at which point Bradley was stabilized against the wall using a compliance hold. *Id.* at ¶¶39-40. Wodack secured Bradley's head and directed him to stop resisting. *Id.* at ¶41. Jones and Bikowski used a compression hold (which uses slightly less pressure than a compliance hold), and Wodack secured Bradley's head for the remainder of the escort to the control status cell. *Id.* Bradley wore a privacy wrap throughout the entire escort. *Id.* at ¶45. Bradley was placed in the control status cell, and his restraints, spit hood, and privacy wrap were removed. *Id.* at ¶¶47-53. There was a slight delay in removing the tether because the

4

handcuff key broke off in the tether, but Wodack used the bolt cutters to cut the cuff off of Bradley's right wrist after Bradley stopped resisting. *Id.* at ¶54. Bradley was given a security mattress, a kilt, and access to toilet paper. *Id.* at ¶56.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

Defendants assert that the Court need not reach the merits because the case should be dismissed based on Bradley's failure to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(1); *see also*

5

Case 1:20-cv-00081-WCG   Filed 01/22/21   Page 5 of 14   Document 90

*Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citation omitted).

That said, a prisoner is not required to exhaust administrative remedies if those remedies are not truly "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 655-56 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002). Failure to exhaust "is an affirmative defense, and the burden of proof is on the defendants." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

### A. Bradley's Inmate Complaints and Appeals

Bradley filed four inmate complaints relevant to this lawsuit. He submitted inmate complaint WCI-2018-7105, which was received by the institution complaint examiner's office on March 23, 2018, about a week after the incident. In the inmate complaint, Bradley raised concerns of being placed in compliance holds, sustaining injuries, and having a privacy towel come off him in view of others. Dkt. No. 79-2 at 10. On March 23, 2018, the institution complaint examiner (ICE) recommended dismissal with modification. The ICE noted that Bradley's "claims made regarding the manner in which staff maintained physical control of him and in which compliance was maintained during escort are related to conduct reports C/R 3121424 and C/R 3121515 and

6

will not be addressed, referencing DOC 310.08(2)(a)." Dkt. No. 79-2 at 7.  At the time, Wis. Admin Code § DOC 310.08(2)(a)[1] stated, "An inmate may not use the [Inmate Complaint Review System] to raise the following issues: Any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303."

About four months later, Bradley submitted inmate complaint WCI-2018-15185, which was received by the institution complaint examiner's office on July 16, 2018.  In that inmate complaint, Bradley asserts that he was sexually abused by Sergeant Beahm and "dragged down the hall naked[,] head slammed into a wall for no reason." Dkt. No. 79-3 at 10.  The ICE recommended dismissal and noted that, considering the nature of the allegations, the matter was being forwarded to the warden for further processing.  Bradley's appeal was later rejected as untimely.

About two months later, Bradley filed inmate complaint WCI-2018-19184, which was received by the institution complaint examiner's office on September 10, 2018.  Bradley complained that his head was slammed into the wall for no reason and he was dragged down the hall naked. Dkt. No. 79-4 at 8.  The same day that the inmate complaint was filed, the ICE rejected the inmate complaint as untimely because it was filed more than fourteen days after the underlying incident without good cause for the untimeliness.  The rejection was upheld by the reviewing authority.

Finally, about a year later (and nearly eighteen months after the incident) Bradley submitted inmate complaint CCI-2019-15987, while at Columbia Correctional Institution, which was received by the institution complaint examiner's office on September 10, 2019.  Bradley complained that he was physically and sexually assaulted on March 16, 2018. Dkt. No. 79-5 at 9-

---

[1] References to the Wis. Admin. Code § DOC 310 are to the December 2014 version, which was in effect at the relevant time.

10. Based on the nature of the allegations, the ICE forwarded the inmate complaint to the warden for review. *Id.* at 5. Bradley's appeal was dismissed because the Warden confirmed that the matter was already being investigated and a parallel investigation was neither necessary nor allowed per policy.

### B. Analysis of the Exhaustion Issue

As noted, a prisoner is not required to exhaust administrative remedies if those remedies are not truly "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). It is Defendants' burden to show that the administrative remedies were available. Defendants have failed to do so with regard to Bradley's allegations of excessive force. In Bradley's first inmate complaint, which was filed within the required fourteen-day window, the ICE declined to address Bradley's allegations of excessive force because those allegations were relevant to pending conduct reports. According to the rule cited by the ICE, Bradley could not complain about the issue of excessive force until after he exhausted the disciplinary process.

Defendants provide the Court with no information about whether Bradley exhausted the disciplinary process, including whether Bradley raised his concerns about the use of force in that process and whether doing so would have been sufficient to exhaust his administrative remedies. Further, when Bradley raised his concerns about the use of force a second time (presumably after the disciplinary process had been exhausted), the ICE failed to address his concerns. Instead, the ICE recommended dismissal and forwarded Bradley's complaint to the warden for review. It is not clear from the ICE's decision whether *all* the allegations in Bradley's inmate complaint would be reviewed by the warden or only those concerning the alleged sexual assault. Bradley was given no direction. He was not informed whether the warden would review those allegations or whether he should file another inmate complaint containing only those allegations.

8

In an effort to have his concerns addressed, Bradley filed two additional inmate complaints about the use of force. The third inmate complaint was rejected as untimely, but in response to the fourth inmate complaint, he was informed that the warden's review was ongoing. That response also was silent about whether Bradley's excessive force allegations were being reviewed by the warden along with his sexual assault allegations.

The Seventh Circuit recently emphasized that "[a]n administrative scheme [] can be so opaque that it becomes, practically speaking, incapable of use." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citations and internal quotation marks omitted). While "[m]ere ambiguity might not make the administrative process unavailable[,]…if no ordinary prisoner can make sense of what it demands, the process is unknowable and thus unavailable." *Id.* (citations and internal quotation marks omitted).

The Court finds that the administrative remedies were unavailable to Bradley with regard to his excessive force allegations. In response to Bradley's second inmate complaint, the ICE noted that Bradley's allegations would be referred to the warden for review. However, the ICE failed to inform Bradley whether that review would include an assessment of his excessive force allegations, which largely overlapped with his sexual assault allegations. Without that clarification, Bradley could not make sense of what he should do to ensure his excessive force allegations were addressed. Accordingly, the Court finds that Defendants have failed to show that the administrative remedies were available with regard to Bradley's excessive force claim.

The Court reaches a different conclusion with regard to Bradley's claim that Taplin was deliberately indifferent to his injuries. In his first inmate complaint, Bradley identified the "one" issue he was raising as the force that was allegedly used against him and the exposure of his genitals when the privacy towel came off. Dkt. No. 79-2 at 10. Although he briefly mentions not

9

receiving medical attention in his narrative describing the details of his inmate complaint, he does not identify the failure to receive medical attention as the issue of the inmate complaint. A complaint about the lack of medical treatment is separate from a complaint about excessive force. And, the administrative code is clear that an inmate complaint may raise only one issue. Wis. Admin. Code § DOC 310.07(5). Also, unlike Bradley's excessive force allegations, the lack of medical care issue was not relevant to the conduct reports that were pending at the time he filed his inmate complaint. Thus, nothing precluded Bradley from raising the lack of medical issue in an inmate complaint prior to him exhausting the disciplinary process. Because Bradley failed to timely file an inmate complaint about the alleged lack of medical care, the Court finds that he failed to exhaust the available administrative remedies as to that claim. Taplin is entitled to summary judgment.

## ANALYSIS OF THE MERITS

Under the Eighth Amendment, correctional officers violate an inmate's constitutional rights "when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "Whether a guard applies force in good faith to resolve a disturbance or, rather, maliciously with intent to cause harm, turns on factors including the threat reasonably perceived by the guard, the need for and the amount of force used, and the injury suffered by the prisoner." *Boyd v. Pollard*, 621 F. App'x 352, 355 (7th Cir. 2015).

The parties have two very different versions of what occurred during Bradley's strip search and escort to a controlled status cell. Fortunately, the Court has the benefit of a video, which confirms Defendants' version of what occurred. It shows that Defendants did not use excessive

10

force during the strip search or while escorting Bradley to the control status cell. Throughout the video, Bradley can be heard making threats, using vulgarities, and laughing. Defendants can be observed largely standing by while someone informs Bradley what actions are about to be taken. Although multiple officers have their hands on Bradley, the Court observes nothing in Bradley's body language or demeanor to indicated that he is in pain. During the strip search, Bradley moves quickly backward toward the officer removing his pants. An officer responds forcefully, but not excessively so and only to gain Bradley's compliance. Once Bradley acknowledges an officer's order to stop resisting, Defendants immediately relax and release Bradley from the compliance hold.

Similarly, while escorting Bradley up the stairs from the strip cage to the control status cell, Defendants respond suddenly to movement from Bradley. At that point, they stabilize him against the wall, then, after he complies with orders to stop resisting, they stabilize his head and arms and slowly walk him backwards up the stairs and about ten feet down the hall to his cell. Although the stabilization of Bradley's head and arms was no doubt uncomfortable for him, no jury could reasonably conclude the techniques used were excessive; it is clear that the officers' purpose in using the techniques was to gain Bradley's compliance. Up to that point, Bradley had been yelling threats and insults, including that he would kill an officer. Stabilizing him while walking up a flight of stairs backwards was necessary to maintain both Defendants' and Bradley's safety.

The Court acknowledges that the video does not capture all of the parties' interactions. For example, after Defendants place Bradley in his cell, the cameraman remains in the hallway. Although the video does not show the parties' interactions in the cell, the Court notes that Defendants were in the cell only briefly. Defendants can be heard giving orders, and Bradley can

11

be heard insulting Defendants and laughing. Only at one point, just before Defendants exit the cell, can Bradley be heard expressing that he is in pain. This is in response to Defendants assisting him to a standing position from a kneeling position. Bradley states that his knee is bleeding. Nurse Taplin looks through the window and later observes that he has a small scratch.

Throughout the video, including when exiting Bradley's cell, Defendants remain calm and collected; their facial expressions and body language are relaxed. They passively perform their duties, largely ignoring Bradley's disrespectful statements, threats, and vulgarities. In every way, the video blatantly contradicts Bradley's version of events and dispels any notion that Defendants used excessive force. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment."); *Boyd v. Pollard*, 621 F. App'x 352, 355 (7th Cir. 2015) (finding that where a factfinder has video showing a prison official's conduct was proper for part of an incident, the factfinder can reasonably infer that the prison official's conduct was proper for the entire incident). In short, after viewing the video, the only reasonable conclusion a jury could reach is that Defendants used force in a good faith effort to maintain or restore discipline.

Bradley apparently concedes that the video shows what Defendants say it shows, but he argues that the Court should deny Defendants' motion because he is not the person in the video. According to Bradley, Defendants used someone who impersonated him to create the video. Dkt. No. 83 at 5-7. He says they "chopped pieces of the audio, added words, [and] took words out." *Id.* at 5. As such, Bradley insists that the Court should disregard the video and grant summary judgment in his favor.

12

The Seventh Circuit has explained that Courts need not credit assertions that are "so nutty ('delusional' is the polite word) that they're unbelievable." *Gladney v. Pendleton Correctional Facility*, 302 F.3d 773 774 (7th Cir. 2002). The Court finds that Bradley's argument regarding the video falls into this category. Nothing in the video suggests that it has been manipulated, and Bradley provides no evidence to support his outlandish claim.

Given that Bradley presents no valid basis for discrediting the video and given that the video blatantly contradicts Bradley's version of what happened, the Court finds that Bikowski, Wodack, and Jones are entitled to summary judgment on Bradley's excessive force claim. Finally, given that Bradley's excessive force claim fails, his claim that Tritt, Leopold, and Beahm failed to intervene also fails. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005) (acknowledging that "the fate of plaintiff's failure to intervene claim is closely linked to that of her excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene"). Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 75) is **GRANTED**. Bradley's motion for sanctions and supplemental motion for sanctions (Dkt. Nos. 69 and 72) are **DENIED**, and his motion for summary judgment (Dkt. No. 68) is **DENIED**. Bradley's deliberate indifference claim against Taplin is dismissed based on Bradley's failure to exhaust his administrative remedies, and Bradley's excessive force and failure to intervene claims are dismissed on the merits. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 22nd day of January, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.